IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CALVIN C. MONTS II,

      Plaintiff,

vs.                              Case No: 5:12-cv-258-MP-GRJ

CLINTON GREER and
REYMOND HILL,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate serving a life sentence in the custody of the Florida Department of Corrections, initiated this civil rights case in state court, and Defendants subsequently removed to this Court. (Docs. 1, 5.) Plaintiff is proceeding pursuant to an amended *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 11). The case is presently before the Court on Doc. 12, Defendants' Motion to Dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), failure to exhaust administrative remedies, and qualified immunity. Plaintiff filed a response in opposition to the motion to dismiss, Doc. 16, and therefore this matter is ripe for review. For the following reasons, the undersigned recommends that the motion to dismiss should be granted, and that judgment should be entered in Defendants' favor.

## I. BACKGROUND

Plaintiff alleges that on February 2, 2012, upon arrival at the Northwest Florida Reception Center, he was strip searched. He alleges that during the search, Defendant Greer made him spread his anus until the interior was visible and at that time, Defendant

developed an erection and said, "Ooh Yea-a-ah!" and "I want to see that pink (anus)! Hold that position right there!" Plaintiff alleges that Defendant Greer grabbed his (Defendant Greer's) penis and gestured in a gratifying manner and made noises of pleasure. Defendant Greer then returned to the side of Defendant Hill and allegedly told Plaintiff to pull his buttocks wider. Plaintiff alleges that after using his hands to spread his buttocks, he was required to use the same hand to lift his testicles and penis and then put his hand in his mouth and roll over his gums. With regards to Defendant Hill, Plaintiff alleges that Defendant Hill stood by while Defendant Greer "acted reckless and maliciously" and while Plaintiff's buttocks were spread, remarked that "This is my favorite part of the day."

Plaintiff further alleges that on June 11, 2012, Defendant Greer threatened to put Plaintiff into a coma if he did not withdraw the complaint he filed in state court (which was superseded by the current amended complaint (Doc. 11) after the case was removed to federal court).

Plaintiff alleges intentional infliction of emotional distress, violation of his First, Eighth, and Fourteenth Amendment rights, and retaliation. He seeks declaratory relief; $175,000 in compensatory damages; $300,000 in punitive damages; $50,000 in nominal damages; and "a preliminary and permanent injunction ordering defendants to cease their lewd acts and sexual harassment during strip search." (Doc. 11.)

## II. DEFENDANT'S MOTION TO DISMISS

Defendants' primary arguments in their motion to dismiss are that: (1) Plaintiff failed to exhaust his administrative remedies as to the retaliation claim; and (2) Plaintiff has failed to state a claim for any constitutional violation stemming from the strip search. They also argue that Defendants are immune in their official capacities; Plaintiff failed to disclose his

prior litigation; Plaintiff fails to state a claim for intentional infliction of emotional distress; Defendants are entitled to qualified immunity; Plaintiff cannot recover compensatory or punitive damages in absence of a physical injury; and Plaintiff's requests for declaratory and injunctive relief are moot.  (Doc. 12.)

### III.  STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, .  ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings."  *Hopkins v. Saint Lucie County*

*School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[1]

## IV. DISCUSSION

### A. <u>Exhaustion of retaliation claim</u>

Plaintiff alleges that on June 11, 2012, Defendant Greer made retaliatory threats to put Plaintiff in a coma for initiating this lawsuit. Plaintiff filed suit in state court on May 23, 2012 in the Second Judicial Circuit Court in and for Leon County, and it was later removed by Defendants to this Court. (Doc. 5.)

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue, v. Pearson,* 2011 U.S. Dist. LEXIS 66950, *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005)).

Plaintiff could not have exhausted his administrative remedies as to the retaliation claim prior to May 23, 2012, when he filed the original complaint in this case, because he alleges that the threats were in response to the filing of the suit which did not occur until June 11, 2012. *See, e.g., Smith v Terry,* 2012 U.S. App. LEXIS 20352, at *5-6 (11th Cir. 2012) ("[amending an original complaint] did not change the important historical fact: [the prisoner's] administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect.") (citing *Harris v. Garner,* 216 F.3d 970,

---

[1]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

974 (11th Cir. 2000) (en banc)). Plaintiff's argument that exhaustion was "unavailable"[2] to him because of an investigation by the Office of the Inspector General is unavailing. (Doc. 16.) The facts underlying Plaintiff's retaliation claim did not arise until *after* this suit was filed, making exhaustion or even unavailability temporally impossible. Accordingly, Plaintiff's retaliation claim is due to be dismissed as unexhausted.

## B. <u>Failure to state a claim for Eighth Amendment violation</u>

Plaintiff alleges that Defendants sexually harassed him during the strip search: Defendant Greer by making sexual comments and gesturing with his erect penis; and Defendant Hill by making a sexual comment.

The Eleventh Circuit has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment.[3] "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."[4] The Eleventh Circuit concluded that there are two components to such a claim: (1) the injury must be objectively, sufficiently serious (more than *de minimis*); and (2) the corrections officer must have a sufficiently culpable state of mind.[5]

---

[2] The only circumstances where courts have found exhaustion was not required are extremely narrow and involved situations where the circumstances rendered the remedies "unavailable." Such circumstances include where the inmate could not have known of the grievance process through reasonable effort; when prison officials made serious threats of substantial retaliation to a prisoner; or where prison officials took direct and significant actions to thwart the grievance process.

[3] <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir.2006).

[4] <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2nd Cir. 1997).

[5] <u>Boxer</u>, 437 F.3d at 1111.

The culpable state of mind of the corrections officer, the second component, may be inferred from the act of sexual abuse, but "isolated episodes of harassment and touching" do not meet the first requirement, although such acts are despicable and potentially the basis of a state court tort action, they may not be of constitutional proportions.[6]

Cases where the injury requirement has been met involve some type of intrusive sexual contact, acts beyond mere touching, and allegations of pain.[7] Otherwise, courts have found no constitutional violation. For example, the court in Boddie found that the inmate failed to state an Eighth Amendment violation, where he did not allege any pain or injury, but complained about sexual comments by a female officer, who also pressed herself up against him in a sexual manner.[8] Likewise, in Boxer, the Eleventh Circuit found that an inmate forced to masturbate in front of a female officer by threat of reprisal suffered only a *de minimis* injury, which did not violate the Eighth Amendment, but did state a claim for violation of his "privacy rights."[9]

------------------------------------------------

[6] Boxer, 437 F.3d at 111, *citing* Boddie, 105 F.3d at 861.

[7] Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000)(demand for oral sex accompanied by grabbing and pushing inmate up against bars); Smith v, Cochran, 339 F.3d 1205, 1208 (10th Cir. 2003)(forced oral sex and sexual intercourse); Little v. Walker, 552 F.2d 193, 197 (7th Cir. 1977) (rape); Styles v. McGinnis, Case No. 0-1415, 2001 WL 1667273, *2 (6th Cir. Dec. 26, 2001) (forced rectal examination); Liner v. Goord, 196 F.3d 132, 135 (2nd Cir. 1999)(intrusive body cavity search).

[8] Boddie, 105 F.3d at 861. See also Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (sexual harassment for it to be actionable must involve pain of some type to constitute an injury).

[9] 437 F.3d at 111. This result has been criticized, but not overruled. See Boxer X v. Harris, 459 F.3d 1114, 1116-17 (11th Cir. 2006), *reh'g en banc denied*, (Barkett, J., dissenting, forced masturbation should be considered serious sexual abuse), *cert.denied*, 549 U. S. 1323 (2007).

Other cases have held that "one incident of non-violent harassment alone was not sufficient to meet the cruel and unusual punishment standard."[10] An attempt to grab an inmate in a sexual manner, absent an allegation that the guard actually touched him, is not sufficiently serious to support a constitutional violation.[11]

With regard to the alleged sexual assault, even accepting Plaintiff's version of the facts as true for purposes of the motion to dismiss, he has failed to state a claim for a constitutional violation. The alleged comments and gestures, while inappropriate, do not rise to the level of unconstitutional sexual abuse. Plaintiff has alleged emotional distress, humiliation, and embarrassment, but does not allege anything that would fulfill the injury requirement.

In his amended complaint and response to the motion to dismiss, Plaintiff insists that Defendants violated the Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. § 15601 et seq. However, the PREA does not create a private cause of action upon which Plaintiff can rely. *See*, *e.g.*, *LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009); *Bell v. County of Los Angeles*, No. CV 07-8187-GW(E), 2008 WL 4375768, at *6 (C.D. Cal. Aug. 25, 2008); *Chinnici v. Edwards*, No. 1:07-cv-299, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008); *Rindahl v. Weber*, No. CIV. 08-4041-RHB, 2008 WL 5448232, at *1 (D. S.D. Dec. 31, 2008).

---

[10] Marino v. Commissioner, No. 8-326-B-S, 201 WL 2731791, *10 (D. Me. June 30, 2010) (inmate forced to walk around holding his own genitals); Silvagnoli v. Fischer, No. 9:07-CV-561 (NAM/GJD), 2010 WL 1063849, *14 (N.D.N.Y. Mar. 1, 2010) (guard alleged to have attempted to grab inmate's groin area); White v. Bergenstock, No. 9:08-CV-717 (FJS/DRH), 2009 WL 4544390, *4 (N.D.N.Y. Nov. 25, 2009) (guard told inmate to show him his penis if he wanted extra food).

[11] Collins v. Graham, 377 F.Supp. 2d 241, 244 (D. Me. 2005).

C. <u>**Failure to state a claim for Fourth Amendment violation**</u>

Plaintiff's challenges to the reasonableness of the strip search itself are properly analyzed under the Fourth Amendment. Plaintiff claims that he was forced to spread his buttocks open until the interior of his anus was visible, and that he was required to then use the same hand to lift his penis and testicles and reveal his gums.

The Fourth Amendment protects against unreasonable searches and seizures by the government. "Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison,' but they do not enjoy the same Fourth Amendment rights as free persons" and, among other types of searches, "[t]hey must submit to visual body-cavity searches without individualized suspicion." *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (internal quotations and citations omitted); *see also Bell v. Woflish,* 441 U.S. 520, 545 (1979); *Harris v. Thigpen,* 941 F. 2d 1495, 1513 (11th Cir. 1991). A visual body-cavity search is a strip search which includes the visual examination of the anal and genital areas. Fla. Admin. Code 33-602.204(2)(e)(3).[12] Visual body-cavity searches are acceptable, and while they are not required to be conducted delicately and in the least-intrusive manner, they must be conducted in a reasonable, non-abusive manner. *See, e.g., Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (finding search unreasonable where Plaintiffs were strip searched in a broom closet, in front of one another, and anally penetrated by a baton or club).

---

[12]Florida Administrative Code states: "When a strip search is to be made, the inmate will remove all clothing, place it in a pile, then move away from it a few paces. The search will include hair, ears, and mouth (dentures to be removed). The entire body will then be checked including armpits, hands, pubic region, between the toes, soles of the feet, rectum and inner portions of the legs." Fla. Admin. Code 33-602.204(2)(e)(3).

Plaintiff does not allege facts that give rise to a claim that the visual body-cavity search was unreasonable or abusive. He was forced to spread his buttocks for a visual inspection of his anus and other parts of his body were inspected as well, consistent with DOC regulations and the general purpose of a strip search. Nothing in Plaintiff's version of the facts gives rise to the type of egregious search that would state a claim for a constitutional violation. *See, e.g., Moton v. Walker*, 2012 WL 380134 (M.D. Fla. 2012) (finding no constitutional violation where Plaintiff alleged that officer subjected him to a strip search and ordered to bend a the waist and spread his buttocks three times, while allegedly wearing "a lewd, sadistic, malicious smile on his face"). Accordingly, Plaintiff's challenge to the reasonableness of the search is due to be denied.

### D. Failure to disclose prior litigation

Defendants note that Plaintiff completed the Amended Complaint (Doc. 11) on the Court's form and signed it under penalty of perjury yet failed to disclose 10 prior cases. The Amended Complaint reflects that Plaintiff disclosed two prior cases: (1) the state case underlying the instant case; and (2) a federal habeas corpus petition. Plaintiff added the following disclaimer: "** Note: Plaintiff is unsure of all and any prior civil cases, including Habeas Corpus." (Doc. 11, p. 4.) In his response to the motion to dismiss, Plaintiff explains that he does not have any records of his previous cases due to DOC regulations on destroying inactive legal material and lack of online access to court dockets. He also advises that he unsuccessfully requested, in writing, information regarding his prior cases. The cases Defendants allege Plaintiff failed to disclose include federal cases filed between 1995 and 2001 and state court cases filed in 2000, 2007, 2008, 2011, and 2012. Defendants have not provided the Court with the details of these cases. (Doc. 12, p. 5.)

In the absence of any basis for excusing a plaintiff's lack of candor, failure to disclose previous lawsuits as clearly required on the Court's prisoner civil rights complaint form warrants dismissal of the complaint for abuse of the judicial process. *See Redmon v. Lake County Sheriff's Office*, No. 10-11070, 2011 WL 576601 *4 (11th Cir. Feb. 10, 2011).[13] In light of Plaintiff's explanation in his response and the age of the previous federal cases, the undersigned finds that dismissal is not necessary. Furthermore, dismissal on these grounds would be without prejudice, and given the numerous other flaws in Plaintiff's claims, disposition on the merits is warranted.

### E.  Defendants are entitled to qualified immunity

Defendants allege they are entitled to qualified immunity from suit in connection with the claims arising from the strip search. The defense of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738)). The doctrine balances the competing but equally important goals of affording officials immunity from suit for reasonable actions taken within the scope of their duties and holding those officials responsible who abuse their power. *Id.*

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) laid out a two step test for determining whether the actions of a government official fall outside

---

[13]Pursuant to 11th Cir. Rule 36-2, unpublished opinions are not binding precedent but may be cited as persuasive authority.

the scope of qualified immunity. The Court held that in analyzing a qualified immunity case a court should first ask whether, "on the facts alleged, a constitutional violation could be found." *Id.* at 206, 121 S. Ct. at 2159. Next, the court must determine whether the violation alleged is clearly established in the law, such that a reasonable government official would be aware that he is bound by its prohibitions. *Id.* at 202, 121 S. Ct. at 2156. In *Pearson*, the Court receded slightly from its holding in *Saucier*, holding that a court may decide in its discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236, 129 S. Ct. at 818.

As discussed in detail above, the allegations in Plaintiff's amended complaint (Doc. 11) do not describe a constitutional violation, and therefore he has not satisfied the first part of the *Saucier* test. Even if the facts could be deemed to establish a constitutional violation, the actions as described in Plaintiff's complaint have not been established as being clearly unlawful. *See, e.g., Webb v. White,* (finding defendants entitled to qualified immunity where female officer was alleged to have watched male detainee during his strip search). To the contrary, the case law involving claims arising from strip searches would not put Defendants on notice that their alleged behavior constituted a constitutional violation. *See, e.g., Evans v. Stephens,* 407 F.3d 1272, 1281 (11th Cir. 2005); *Moton v. Walker*, 2012 WL 380134 (M.D. Fla. 2012); *Fillmore v. Page,* 358 F.3d 496, 505 (7th Cir. 2004); *Delarosa v. Texas*, 2009 WL 2870061 (N.D. Tex. 2009).

### F. Defendants are immune from suit in their official capacities

An official capacity claim is, in all respects other than name, to be treated as a claim against the entity of which the defendant is an agent. *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985). To prevail under § 1983 against that entity, a plaintiff must show that the entity itself was the "moving force" behind his constitutional deprivation; and the only way to do that is to identify a "policy or custom [of the entity that] played a part in the violation of federal law." *Id*. In the instant case, Plaintiff has not identified a policy or custom of the DOC that played a part in Defendants' alleged violations. Moreover, the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities. Defendants are entitled to dismissal to the extent they are sued in their official capacities.

### G. **Plaintiff is not entitled to compensatory or punitive damages**

Plaintiff seeks compensatory and punitive damages against Defendants. However, Plaintiff does not allege that he suffered any physical injury as a result of the strip search. The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e); *Smith v. Allen* 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.2002)). Plaintiff has alleged no physical injury in connection with his claims, and he is therefore barred by the PLRA from seeking compensatory and punitive damages. *See id.*

### H. **Plaintiff's's claims for declaratory and injunctive relief are moot**

Plaintiff's requests for declaratory and injunctive relief arise out of his allegations against events at the Northwest Florida Reception Center. He is currently incarcerated at Avon Park C.I. (Doc. 17.) In a § 1983 action filed by a prisoner, requests for injunctive and declaratory relief become moot up on the transfer of that prisoner form the facility where his cause of action arose. *Spears v. Thigpen*, 846 F. 2d 1327, 1328 (11th Cir. 1988).

"Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." *Wahl v. McIver,* 773 F. 2d 1169, 1173 (11th Cir. 1985). Plaintiff's requests for injunctive and declaratory relief are moot because he is presently incarcerated away from Defendants.

## I. Plaintiff's state law claim

To the extent Plaintiff alleges a state law claim of intentional infliction of emotional distress, the Court should decline to exercise supplemental jurisdiction where the federal claims have been dismissed. The decision to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over pendent state law claims rests within the discretion of the district court. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over state law claims where the district court has dismissed all claims over which it has original jurisdiction. Where, as here, the federal claims are dismissed prior to trial – and only the state claims remain – the Eleventh Circuit has "encouraged" district courts to dismiss the remaining state claims, rather than exercising the Court's supplemental jurisdiction to resolve only the state claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Accordingly, with regard to Plaintiff's state law claim, it is not appropriate for resolution in federal court and, therefore, the Court should exercise its discretion under § 1367(c)(3) and decline to exercise supplemental jurisdiction.

# V. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 12) be **GRANTED** and that this case be **DISMISSED** and judgment entered in Defendants' favor.[14]

**IN CHAMBERS** this 15th day of July 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[14]The Department of Corrections is currently listed as the first Defendant on the Court's docket. However, because Plaintiff did not name the DOC in his amended complaint (Doc. 11), the **Clerk** is directed to terminate the DOC as a party.